1731 Carucel Investments L.P. v. Vidal. Mr. Baer. Good morning, your honors. I have spoken with opposing counsel. I think you'll find the first two arguments to be largely duplicative of each other, so if the court would prefer to combine the arguments, we would be open with that. We're also fine proceeding with them in separate appeals. Probably makes sense to combine them. Why don't we do that? Thank you. Thank you. So hopefully you don't need half an hour aside. I hope not. If it takes me that long to make my point, I'm in trouble. Good morning. My name is Brian Baer. I represent the appellant, Carucel Investments. In the briefing for both of these appeals, Carucel presents basically two major buckets of arguments for the court. One is pertaining to issues of claim construction, the basic substantive disputes that we have with the final written decisions, and then the other bucket is with the APA and the implementation of the Arthrex director review decisions. Because the substantive points of patent law would obviate the need for addressing the APA. I'll start first with that, but of course we'll address any of the issues as the panel would require. The largest and most pervasive issue that we have with the final written decisions below in both proceedings is an issue of claim construction with the construction that was given to mobile unit and mobile device. That is a limitation that is throughout each of the challenge claims. Below in the final written decisions, it was a plain and ordinary construction, but if you look at the substance of the decisions, it really adopted in the final written decisions the construction that was proposed by the petitioners, which was a movable device capable of receiving and transmitting radio signals. A very open-ended construction that would embrace almost any type of wireless device. Carousel urged, and we think the proper construction in light of the specification is more narrow than that, specifically a device that must register with and be directly able to communicate with a cellular network. Ben, let me ask you. I think this provision in the spec is 748 of the joint appendix. I have just one question. My question may make sense, it may not. It may be of no importance, but it says, when a mobile unit set is first powered up or first enters a service area, the mobile unit must register in the manner described earlier. Focusing on that in the manner described earlier, where earlier in the spec is that registration requirement required? I could very well have missed it, but I looked back and I couldn't find that. I believe that it is within the very first portion when it is describing the problem in the prior art and what the patentee was trying to address. What is extensively described is the handoff problem, which occurs with cellular devices. In that first part of the background in the specification, the patentee explains that when a cellular device goes from one cell to another communication cell, there is a handoff issue as speeds increase, as there are distances. It describes that that issue is because a cell phone device... You are saying the handoff discussion, and I do recall that, you are saying that is what is being referred to here when the specification talks about must register in the manner described above? That is my understanding, yes. There are no words that say must register. This is referring back to the handoff discussion. Exactly. Your Honor, I think that is a very key point about this. On the other side, the assertion is we are importing limitations from the spec, the classic issues with that. If you look at the handoff issue and the registration issue, it is central to the problem that the novelty of the invention. The idea was current mobile units have this issue. It becomes pronounced as speeds start to increase in traffic. The novel way of addressing this problem is by creating these moving base stations interspersed between it. If you take out the registration component of a mobile unit, you lose the problem that is being addressed. You lose the novelty of the invention. You are saying the registration has to be directly with the cell? Correct. The cell operation? Yes, Your Honor. The claims, though, seem to describe all the communications going through the moving base stations. The vast majority of the spec is devoted to that, but there are portions of the spec where it does talk about the communication with the fixed base stations. For instance, if you look at columns 10 starting at 37 to the end of the patent in column 11, one of the things that is being described there is the mobile unit preferentially connecting to either fixed base stations or the moving base station based on signal strength and error rate. That is describing the registration focus of how this mobile device will preferentially choose one of the base stations, either the novel moving base station or the fixed base station. As pointed out in the green brief and the red brief, there isn't a lot of discussion about the registration with the fixed ports. It is there in the spec, but part of that is because that is what the prior art was doing. The prior art was dealing with fixed base stations with cell phones registering with them. You would expect the patentee to not devote a lot of the specification describing how that occurs. Where you would expect a lot of discussion in the specification is that choosing, for lack of a better term, algorithm, that choosing process of whether I go for the moving base station or the fixed base station. That is described in that portion of the spec. So what about the fact that your client chose to describe it as a mobile device rather than a cellular telephone? That really seems to me to suggest an effort to broaden it beyond cellular devices. I think that when we look back at the spec, when it does describe the mobile unit, there is no discussion of any portion of the mobile unit operating outside a cellular device. Okay, but you're not really addressing my question. My question is, it would seem natural if you wanted to claim a system that was limited to cellular telephones to use that terminology, which is used in the specification. And the applicant here selected a different nomenclature to describe it, which seems to be broader than cellular telephone. How do you deal with that? So I think that there is a middle ground of where the patentee was trying to go with it. I think your Honor's example of using a cellular telephone would probably be too narrow, because it would just be the cell phone itself. Or cellular device. Cellular device. Cellular device would probably be, would embrace these other devices that were starting to come online that are described. But they're all tethered to the idea of a cellular network. I agree with you, your Honor, that it is trying to broaden beyond just a traditional cell phone at that point. But there's nothing in the spec that would suggest that there is anything being dealt with outside of a cellular network. There could be, and what the patentee was trying to claim, are devices that may operate on a cell phone network that at the time of the invention were on the horizon, and they were trying to embrace that. But, you know, I do agree that there are ways that the claims could have been drafted even tighter to make it absolutely explicit. But this is one instance where the claim construction and the spec are at least clear enough on this point of what the novelty is and what's being addressed that I don't think that the patentee was required to make that narrow of claim language when the spec is explicit. It isn't being required. It's a question of trying to understand what was intended here. And if you have a broad term like mobile device selected over a narrower term like cellular device, it would seem to be intentional and designed to make the claim broader than cellular device. That's the problem. I think that, Your Honor, if cellular was put in there, it would be more explicit and narrow. But I do think from how the patentee used it throughout the spec, I do think it restricts it to that basis. The other point from the perspective of want of skill in the art, which the law compels us to do, why isn't the logical conclusion that when the spec talks mostly about cellular embodiments, but then you get to the claims, it looks like you've broadened it out to something much broader than a cellular system and that that must have been intentional. Why wouldn't that common sense be how want of ordinary skill in the art would read this? I think with the other limitations, the interaction with the base stations being described within the claims, that that would narrow it, too. I mean, it does. And then you take that, of course, with the specification, which you always read the claims in light of. When the specification talks in mandatory languages that this is a functionality that must occur with that device, which is the portion that we cite, I don't think the patentee needs to continue. That's the registration requirement? The registration requirement, yes. And, Your Honor, the other portion I would point out is a lot of the briefs are devoted to the portion of the spec dealing with portable telephones where it's mentioned. The other thing that I think provides some guide that the patentee was narrowing it with that is, when the patentee is describing the goal of how mobile units or cell phones would operate, they would operate as a portable phone in the house. They would operate in the same manner with the same full functionality of it. And when it's describing a way of improving a cell phone or a mobile unit to operate in that manner, it is inherently stating that this is something different than a portable cell phone or a portable terrestrial phone or other aspect with it. Does the specification use the term mobile device? It does not use mobile device. It uses mobile unit. The terms were treated as synonymous below, and we would agree that that was consistent with it. A mobile device versus a mobile unit would mean the same thing. But I don't believe it uses mobile device specifically within the specification for the patent that does use that term. Mobile unit, I believe, is used most throughout the patents. Where's an example of that? In the 904 patent... For example, on 735, line 48 of column 9. In the claims for the 904 patent, they use the mobile unit. And then the mobile device appears in the 023 patent. Claim 1, for instance, uses mobile device. I was thinking of the spec. Oh, the spec. I apologize, Your Honor. Okay. Seeing where my time is going, I do want to... Because we've combined the cases, we'll do a half an hour aside so you have some more time. Okay. Yeah, if you could reset it so that he has 15 minutes left and give the other side 30 minutes. Thank you, Your Honor. Turning to the adapted-to limitation, Your Honor, that was another claim construction issue that we urged should have the construction of to move with the traffic at a rate of speed which is comparable to the speed of the traffic, which is consistent with automotive speeds. We didn't pull that out of the air. There was a prior construction given by a district court. It did come up to this court. It was affirmed without a written opinion. So we were simply urging a construction that was given by a prior court. Putting aside whether there's collateral estoppel issues on it, it does make sense why that limitation was construed with those speed limit constraints. Again, if you go through the specification, it is discussing this in the context of speeds of 0 to 30, 30 to 60. It talks about the problem being specific within automotive speeds. There was a lot below where there were discussions of whether a Cessna airplane would fall within the speed limits that were being contemplated by this limitation. Ultimately, the board did not deal with it and said we don't have to because there is really the adapted-to and the speed of traffic, notwithstanding that construction from the district court, really wouldn't make a difference. Given if there was a proper construction, remand back to the panel for a discussion on that point would force them to look at the prior art and the substantive aspects of that type of analysis. So that would be an independent basis to send this back. In either case, with the claim construction issues, we would urge that a remand back to the panel for a decision consistent for analysis of the prior art would be warranted under the facts. We do have an issue, though, that is substantial evidence but does touch into the APA issues of the description and making an adequate finding with respect to the combination of TDMA and CDMA art in a very high level, as explained in the brief. CDMA was the code division multiple cell phone protocol, which at the time of the invention in the mid-'90s was new. It is now something that is far more commonplace. With certain types of prior art, most notably the ETO reference, which was TDMA, which is time divisional art. The issue that we have with the board's finding on that is we presented very extensive expert testimony that these two types of cell phone protocols on both an operational aspect and also as a matter of the components that would be used were completely incompatible with one another. The citation to the record that we provided is that our experts stated that in order to move one to the other protocol, it's what is called a forklift upgrade, where all the components have to be replaced. We're scratching our head when we get the final written decision, because we point out all of these practical reasons why, as a matter of just not being able to combine them, but also as a motivation to combine teaching away, or just providing a lack of a motivation to combine, why would a POSITA be able to combine these two areas of the prior art that largely had not been combined? In fact, none of the references talk about combining CDMA or TDMA. How do we get there? And if you look at the board's decision, it's pretty stark with how it actually presents that type of analysis. It says, well, the expert says that the POSITA would be very able and would find a way to basically combine these two areas of prior art. Under Alacrotec and with the panel's decision in Sisvell versus Sierra from earlier this month, which certainly was a different procedural posture, that sort of analysis, that sort of ipsedixit analysis from their expert just being adopted by the board, is not an APA-compliant finding of fact. There's really no analysis from the board explaining exactly how you would overcome this massive barrier with TDMA and CDMA. And so specifically with the EDA reference, which is in both of these proceedings, that would be an independent basis to send this back to the board or at least reverse the obviousness determinations where EDA was combined with it. Are you saying there's not even substantial evidence in the record to support what the board credited or just that they didn't explain why they found substantial evidence? I think it's both. And to unpackage that, what they really have is an ipsedixit statement from the expert that says, from the petitioner that says, somehow a POSITA would overcome and combine these together. Ipsedixit statements from an expert really don't meet the standard for substantial evidence, but the error is compounded with something that goes into Alacrotec and CISVL where we really just don't have the type of analysis from the board where we understand why they went that way. And I think Alacrotec and the other precedents from this court state that one of the things you can't do and be APA compliant is to say, petitioner says A, patent owner says B, we like A, and give no analysis beyond that. And that is essentially, at least with the TDMA, CDMA reference combinations, where the board runs into issues. So that would be an independent basis as well to send that back for those claims that utilize ETO in both proceedings. Additionally, beyond just ETO as one example of it, there are other references that are TDMA reference. The shorthand way to look at it, Your Honors, we do have it in the brief, but anything prior to 94, any of the references from the 80s, those all predate CDMA. They're all going to be TDMA functions for the most part. So FinWIC, ETO, those are all going to fall within that gamut of it. With that being said, unless there are other points, I'd move quickly to the APA points. Yeah, I don't think we want to hear argument on the issues that have already been decided and that are binding on this panel. As we said in the brief, the FVRA points, Supreme Court denied cert. We believe unless the court would like to have an en banc hearing, which I don't think will happen, we are not going to push the FVRA points. The rules points about whether the director was required to promulgate rules for the substantive and basis for dealing with the evaluation of director review under Arthrex, that is still an issue. In addition, the delegation of tasks for recommendations that are not provided to the parties for that would also be an independent basis under the APA. Those are still live and not decided by Arthrex II. The regulation issue, the rules and regulation issue is probably the most pointed APA violation that Carousel believes is at issue. As we described in brief, we were dealing with a moving target when this was being briefed because the director, and I think every practitioner who practices in this space, was surprised by the Supreme Court's remedy in the Arthrex decision. I don't think anyone had that on their bingo card. It is understandable that the director would try to implement some sort of solution to deal with the director review aspect as soon as possible. While we are sympathetic to that burden on the agency, the APA does make it clear that when you are going to set substantive rules, that needs to be through the rulemaking process. Certainly, the FAQ and the other guidance documents that the director provided that would often change, even while we were briefing this, that is not compliant with the APA. Certainly, the desire to move this forward expeditiously is understandable. Is there any prejudice to you from this failing, if we were to agree it was a failing? There is. Certainly, they're bringing up the novel issue of waiver of points because they're saying if you didn't raise it in your direct review... What if we rejected that argument? Is there any other prejudice to you? It does create a due process issue. If we would have had a set-in-stone standard of review, for instance, there are things that, if it's a de novo review, generally, as a practitioner, I would bring that to the appellate court because of the standard of review. If it's something where the director is going to review the fact determinations, in other words, not be really bound by substantial evidence, as a practitioner, I would practically put a lot of my director review into issues of fact. Why isn't there a waiver because you select director review? We did put in our director review these complaints. Would you still pursue that course? We've suggested that pursuing a course like that bars you from challenging the standards for applying and proceeding that you sought to take advantage of. I don't believe we waived it because we put these points in our substantive filing with the director when we did review. We did say we have issues with the delegation to unnamed folks. We put that up front. I guess if what Your Honor is suggesting is that there was a separate filing or a motion to stay or something pending rulemaking, certainly that would have been cleaner, but we did try to raise those points at what we perceived to be the time to do it, which is when we are granted leave by this court to file for a review with Arthrex. We were on the clock with that. We put in our substantive filing, the complaints that we had, with the rules, with the delegation, at the time the FVRA. If you want to reserve time for rebuttal, you're running out of time. I would like to reserve time for rebuttal. Thank you, Your Honor. Ms. McComas? Good morning. May it please the court, I'm Debbie McComas on behalf of Unified Patent. I'm dividing my time today with Mr. Tyler, who's representing the patent office. A lot of the claims he'll have to address because my patent is only one IPR with respect to the 023 patent, and that was the only issue that Unified Patent addressed. I'll go there first. I'll reserve as much time as I can for you to talk to the government about the other issues. Importantly, in the 023 patent, there is no issue with respect to adapted to. In the 023 patent, there's no discussion of the CDMA, TDMA issue with ITO. That's not a prior art reference. In fact, the prior art references that were focused on in Unified's 023 patent were MASA and Thrower, which were not addressed in the appeal brief at all. I want to jump quickly to the claim construction issue that does go across the cases, which is mobile device. The elephant in the room that wasn't addressed at all by my opponent is whether mobile device is even a claimed term in the patent. If you look at the patent claims, Judge Stark, you alluded to this, the claims are very broad. These claims in the 023 patent actually don't even claim movable base station. They just claim an apparatus generally. The apparatus comprises three things. It comprises antennas, it comprises a receiver, and it comprises a transmitter. In the receiver, the mobile device is only what the receiver communicates with, receives signals from. That's the only reference to the mobile device. The board focused on this at Appendix 15, noting that Carousel admits, and Mr. Baer repeated it today actually, that what we have here is a movable base station. What was claimed was a movable base station that significantly improved wireless communications by acting as an intermediary between cell towers and mobile devices. The mobile base station is what the mobile device, excuse me, the movable base station is what the mobile device is communicating with, not the cellular network. That's the whole point of the invention. Let's go to the claim construction quickly. Specifically, Carousel, and I think Judge Stark, you focused on this, what they're advocating for is the construction of mobile device as a device that must register with and be directly communicating with the cellular network. That's just not what this claim says. This claim describes a receiver attached to the apparatus. It receives the signals from the mobile device. That is the apparatus itself. That's what's claimed here. It's also not what the specification says. The whole point of the invention, as we just talked about, is for the mobile device to communicate with the mobile base station. If you look at appendix 721, for example, at column 5, line 26, it talks about antennas on the base stations used to communicate with the mobile devices. Then there's a separate set to communicate with the cellular network. Are there any embodiments disclosed in the specification that would not be within the scope of these broad claims if we were to adopt the construction that the patentee wants? No. I think it works the other way around. The claim is so broad, it certainly could include cellular communication. They want us to narrow the scope of the claims by adopting their construction. Isn't that right? Yeah, I think that's fair. Is there anything broadly in the specification that would get lost and cut out of the scope of the claims if we were to narrow them in the way that they ask us? Maybe the answer is no. I think the answer is no. That maybe begs the question, Your Honor, whether you agree with me that mobile device is actually not claimed either, right? That it's just kind of part of the functionality of how the apparatus works as opposed to what's actually being claimed as the invention. There are a few more that are worth pointing out to the extent it's helpful. Appendix 721, column 6, describes standard radio interface between the mobile units and the moving base stations. Consistently throughout the specification, that's what's being claimed here. It's the communication between the mobile base station. It's taking the mobile device, which was having trouble communicating before, and it's improving that by creating a mobile base station that the mobile device communicates with. It's not requiring that the mobile device... It's not claiming an invention that requires the mobile device to communicate with the cellular system. And the board also recognized that there were concessions made by Carousel during the IPR process. You can see that at the final written decision, 14, and specifically it's quoting from appendix 5106, where Carousel describes its invention as a movable base station apparatus configured to provide important benefits to mobile devices, such as smartphone, tablet, and laptop users. And I do want to address very quickly, Judge Shaw, your question. I had the same problem with looking back and trying to find any definition of registration earlier that would explain it, and the only things we found was a discussion of how you register the movable base station to the cellular tower. We didn't find anything specific to register a mobile device. But we did, some of what I've already quoted you, we did find discussions of how the mobile base station communicates with the movable base station. Did I just say that wrong? How the mobile device communicates with the movable base station. In sum, every part of the typical claim construction analysis, from the claims, the specification, and the prosecution history, as well as Carousel's own statements made during the IPR proceeding, support the board's application and treatment of mobile device. And for that reason, with respect to the 023 pattern, the board's decision should be affirmed. I did want to go quickly to the question of director review and the question of waiver, and just want to point out, one of the points, at least we were making in our briefing, and hopefully it was clear, is that with respect to the director review that was asserted in this case, they're not making any of those arguments here. So to the extent you have to show some part of harm to raise an issue in front of this court and have something to complain about, those issues that they raised, as far as substantively to the director, are nothing that was important enough to them to raise it in the briefing before this court. And I'll yield the rest of my time. Okay, Mr. Tyler. Good morning, Your Honors. May it please the court. My name is Mike Tyler. I'm here from the solicitor's office at the United States PTO. I'd like to start with mobile device, and to Judge Stark, your question about would an embodiment be excluded under the proposed definition that Carousel is asking, and I think it's instructive that at Appendix 748 in the discussion of the high-power CDMA mode, that there's at least contemplation in the patent of an embodiment where the device itself is being overpowered by the cell network such that it can only communicate to the mobile base station, and it's taught in the specification that it registers there. The breadth of the claims, I think, really is at the core of this issue, is if the patentee wanted to limit their claims to certain types of devices, they could. They could have added claim language that discusses the registration, but what they're asking this court to do is to look at a very broad claim and find in one embodiment where it says it must do X to then read that into the claims, which is not permissible. Let's look, for example, on the 543 patent, Claim 10, because there is some mention of cellular signals in some of these claims, and this is an example of that. It says an apparatus, blah, blah, blah, configured to receive a plurality of cellular signals. Doesn't that suggest that the claim involves cellular systems? This claim, it would, Your Honor, but again, it is talking about data being extracted from cellular signals. This is some requirement on the information that's being provided to the mobile unit. The mobile unit itself doesn't necessarily have to be a cellular unit, and I think it's extrinsic evidence to the claim construction, of course, but I think a telling bit of information is that the infringement allegations that Carousel had made in district court involved Wi-Fi devices being the mobile unit, which clearly do not register with cellular networks. In a lot of ways, we're in the classic position of broad for infringement and try to get very narrow to avoid prior art. I also think it's instructive to look at, since we're looking at the claims of the 543 patent, if we turn to... I'm sorry. Okay. I'm not sure that I understand what your response was to my question. How can it be that claim 10 here of the 543 isn't limited to cellular systems? Am I... Am I missing something? Your Honor, what I'm trying to describe is the patent, if we look in column 6, I believe, and this is the 904 patent, column 6, lines 43 through column 7, line 1, this is where the patent describes the two distinct interfaces from the mobile unit, the mobile base station. It has a generic radio interface to the mobile unit, and then it is a little more specific, even in the specification about the cellular, from the mobile base station to the cellular network. But a great example is your Wi-Fi hotspot. Those are connecting to a cellular network, and so in here in claim 10, what we're talking about is receiving from the cellular network a signal and then passing on to a device something that includes data extracted from that cellular signal to a mobile unit, which doesn't necessarily have to be a cellular device, is I think how I'm trying to respond to your question about claim 10, is we have to look at the interfaces separately, and in fact their infringement allegations did as well. It's a cellular hotspot connecting to Wi-Fi devices, we would say is in the scope of this claim. It's broad enough to encompass it. They're looking for construction now, which would exclude that very infringement allegation. What again was the prior art that was relied on and which they say would not be in the same field if their construction were adopted? That really does pertain to the Edo reference. Specifically I think that the board, there are a lot of references in moving parts, so I think maybe taking a step back, there are four patents at issue. What I heard counsel argue here today is that any of the bases that involve Edo is what they're challenging. What I didn't hear is any of the Gilhausen 865 reference. The board found that even under their construction, those references taught that limitation. Should the board find either construction, the Gilhausen 865 reference is the primary reference on three of the four patents at issue. It would take care of all of the patents except the 543 patent. Where they need Edo. Remind me, what is Edo involved in? Edo is the car, and the problem it was solving was in a mobile telephone at the time in a car, there was still a cord from where you would have your phone set up and the handset that you were talking on. Edo removes the cord and sets up a device which communicates to the outside world and then radio interfaces to a handset which is in the car itself. There's no dispute that that would not necessarily be able to communicate with the fixed base stations. I think again, just a quick point that hasn't come up yet. In the prosecution during an appeal to the board, the patentee again made a very specific comment about what a mobile unit can be. That's at appendix 2920. There they stated moving mobile units such as telephones, radio modems, or other types of radios. So a very broad radio interface to any telecommunication device. I'd like to move on briefly to the adapted to. I think here we've got a situation where again, we're trying to read a limitation into the claim but it's even one step removed. We're trying to read a limitation into an agreed upon construction from a district court and arguably one that they're collaboratively stopped from challenging now. I think it's also telling if we look at other claims. I think it's the 904 patent. 13, you'll see that, which is not one of the claims at issue, but when the patentee wanted to make sure that a predetermined path was a claim limitation even in a preamble, you can see that claim 13 here uses the phrase a predetermined path. That is absent in the dependent claims in the 904 patent which contain adapted to. Also to be clear for the court, the term adapted to only appears in the 904 patent. So the other three patents would not be affected by whether or not this court agrees with appellant's construction. Unless there's anything else on the claim construction, I'll move on briefly to the obviousness. I think as I mentioned, I didn't hear any challenges to the CDMA combined with CDMA references that the board relied on and specifically those would be the Gilhausen references combined with the other Gilhausen references that broadly discuss cell phone technology. I think broader though is the challenge seems to be that the board was somehow trying to combine TDMA and CDMA standards. And if you look at the combinations, that's not the case. In each of the grounds, you have a telecommunications system as the primary reference and then you have a teaching of something about telecommunications, so spatially separated antennas or cell site diversity. These are concepts which are being employed and combined with the primary reference and I think the board's opinion speaks for itself as far as the rationale they give and the reasonings they give, which I do think satisfy the APA. Unless there's any questions about the adequacy of how the board presented the obviousness arguments, I'm happy to address the remaining director review questions. What is your response? Where do we look for the SysVil or Lacrotec concern? Can you point to a page? So I think the green brief, I tried in both green briefs to give in the summary the areas and highlight where in the opinions the final written decisions where the board addressed these. So for instance, if we want to look at the 701 patent, we have a discussion starting on appendix 91 running through appendix 98 where the board is going through and discussing the evidence before it, the arguments made about why these references can't be combined, and relying on the fact that, again, we're not talking about trying to mesh technologies together as opposed to incorporating spatially separated antennas caught by one reference into the telecommunication system described in the primary reference. This would be what the board is referring to as something that would be able to be done by one of skill in the art without much trouble and with an expectation of success. Did that answer your question? And with respect to the notice and comment rulemaking, just real quick, we still are of the position that these are procedural issues. Even if they are not, Carousel had actual and timely notice of the terms, and as your honors pointed out, they availed themselves of the director review process set forth in those rules. And I think most importantly, which was already raised, is they can't identify any prejudice even if these rules were promulgated and they should have been done by notice and comment rulemaking. But again, the government's position is that was not required here. But if we were to agree with an argument I think you made that they waived certain issues by not presenting them in the director review, would that not constitute prejudice? I think in that case, your honor, that would, but the waiver argument we're making is not under a rule promulgated by the director. That's under just general principles of equity and judicial economy where they have asked this court to go back to the board and then they didn't even raise issues which now they say are central and dispositive and I forgot the words we heard earlier, but very key issues. They didn't even give the director an opportunity to look at it. I think that's a tough one. I mean, the whole idea is they're supposed to be selective in seeking director review. In fact, I don't think there are any cases that truly support the notion that there's a waiver by failing to raise issues before the director. And your honor, the CF side to Polycom is the support that we have for that. And if we reject this argument, it makes it easier for you to say there's no prejudice. That is correct, your honor. Unless there's any other questions, I will yield the balance of my time. Okay, thank you, Mr. Trump. Okay. Mr. Berry's got a little over two minutes here. I will be very brief. If there are certain things you want me to address, I'd be more than happy to do them, but real quick with the last issue addressed, I would say about Polycom, the reason there was waiver was that there was a rule for the inter-parties re-examination which tends to feed our argument that these sorts of things should be in a rule. Going back to the section that the opposing counsel just brought up about when you ask, where in the final written decisions is there that type of APA-compliant discussion, I would note that that comes from the 023 patent discussion, and I don't believe that that portion has the ETO reference being discussed, which is the primary one that we have issues with TDMA. I would point out in the blue brief, we provided a portion of our argument where we cited to, here's the citation to their expert testimony with a discussion from ETO where we kind of pushed that through all the way down to the evidentiary underpinnings of it from the final written decision, and I do think following that portion of the brief that we put out, I think you'll see that there isn't an APA-compliant decision on the TDMA, CDMA reference. Real quick with the prosecution history, that section does say what it does with that one intro sentence that the petitioner made. I would point out that if you read the rest of the prosecution history, which is cited in the blue brief, you come back to the cell phone issue and the registration requirement in describing the handoff problem. So that's really taking a very isolated portion of the prosecution history and pushing it beyond that. In addition, neither party has addressed one of the legal questions that we presented, which is if you believe the specification reads like we believe it reads, can something during the prosecution expand out that issue? And if you look at the case law, I think it's pretty clear you can narrow your claims, the prosecution history, file wrap, or estoppel, but the idea that you would somehow expand the claims beyond that, I don't think that that is really within the law and certainly not within the facts of the intrinsic record before the court. And then the last point I will make, Your Honor, I believe you pointed out that there are claims where we are looking at the mobile device, specifically in the mobile unit, so I do think the idea that the claims are completely agnostic is simply not there. With that, I see my time has expired. Okay, thank you. Thank all counsel. Case is submitted. Thank you, Your Honor. Cases are submitted.